UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

VINCENT FRANCO III and CAROLYN FRANCO,

Plaintiffs,

- against -

ZONING BOARD OF THE INCORPORATED VILLAGE OF AMITYVILLE; and BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF AMITYVILLE,

Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-3413 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Vincent Franco III and Carolyn Franco bring this action against Defendants Zoning Board of the Incorporated Village of Amityville (the "ZBA") and the Board of Trustees of the Incorporated Village of Amityville ("BOT"), alleging that the ZBA's denial of a variance on the height of Plaintiffs' home violated Article 78 of New York's Civil Practice Law and Rules, the Equal Protection Clause of the Fourteenth Amendment, Article I, Section 11 of the New York Constitution, and 42 U.S.C. § 1983 ("Section 1983"). Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint, (Dkt. 18), and Plaintiffs' Cross-Motion to Amend their Complaint, (Dkt. 21). For the following reasons, the Court grants Defendants' Motion to Dismiss in its entirety and denies Plaintiffs' Motion to Amend.

## BACKGROUND[1]

### I. Factual Background

Plaintiffs Vincent Franco III ("Mr. Franco") and Carolyn Franco ("Mrs. Franco") own a parcel of land at 32 Marion Road, Amityville, New York, 11758 (the "Property"). (Compl., Dkt. 1-1, ¶ 8.) Plaintiffs moved to the Village of Amityville (the "Village" or "Amityville") in 2019, and, thereafter, began renovation work to expand the existing structure on the Property. (*See id.* ¶¶ 13, 15.) "From the moment the [Plaintiffs] moved in [their] home[,] the couple's [R]epublican political views were frowned upon by those within the neighborhood and by local politicians." Second Am. Compl. ("SAC"), ¶ 9, *Franco v. Siry*, No. 2:22-CV-4674 (PKC) (SIL) (E.D.N.Y. May 3, 2023) ["*Franco I*"], Dkt. 29.[2] Plaintiffs were "outspoken critics" of Amityville and its leaders. (Compl., Dkt. 1-1, ¶ 13.)

#### A. 2021 Construction Plan and Variances[3]

In October 2020, Mr. Franco sought a "building permit related to the [Property] proposing the addition of a 2-car garage, the reconstruction and addition to the 2nd story of the existing dwelling with 1st and 2nd floor rear decks, and the addition of a front portico." (March 2025 ZBA Decision ("2025 Decision"), Dkt. 19-2, at 2.) A building inspector denied the permit as non-

---

[1] For the purposes of Defendants' Motion to Dismiss, the Court "accept[s] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (citation omitted); *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (same). In addition, as explained in Part I of the Discussion section, *infra*, the Court takes judicial notice of certain documents and considers other documents integral to the Complaint.

[2] In *Franco I*, the Court dismissed Mr. Franco's constitutional claims based on the ZBA's denial of an application Mr. Franco filed in 2022 seeking a variance for the height of his garage. *See infra* pp. 7–8.

[3] An extended discussion of Plaintiffs' applications for variances prior to 2024 may be found in *Franco I*, 2024 WL 2701646, at *1–3 (E.D.N.Y. May 24, 2024).

compliant with the Zoning Code's prescribed limits to setbacks and lot coverage.[4] (*Id.*) Mr. Franco appealed this denial to the ZBA in or around October 2020, and, based on the ZBA's concerns about the size and scope of the proposed construction, Mr. Franco submitted an amended construction plan in May 2021 (the "2021 Plan"). (*Id.*)

Based on these changes, the ZBA approved the 2021 Plan and granted Mr. Franco a variance related to the size of the setbacks. (*Id.*); *Franco I*, 2024 WL 2701646, at *2 (E.D.N.Y. May 24, 2024). The ZBA "expressly conditioned [its] [a]pproval on, among other things, [Mr. Franco] completing [the] construction in conformity with the [2021 Plan] and [Mr. Franco] obtaining additional approval from the Village of Amityville Planning Board." (2025 Decision, Dkt. 19-2, at 2.) The ZBA had also previously granted Mr. Franco permission to "exceed the allowable height of a front yard fence permitted by the Zoning Code." (*Id.*)

In July 2021, Amityville's Planning Board approved the 2021 Plan with certain stipulations, namely that Mr. Franco had to "adhere to the plans submitted in conjunction with [his] application as approved," "obtain all proper building permits," and "abide by all applicable State, Village and Local codes." *Franco I*, 2024 WL 2701646, at *2 (citation omitted).

**B. 2022 Variance Application and Denial**

In or around August 2021, construction on the Property began. SAC, ¶ 19, *Franco I*, Dkt. 29; (2025 Decision, Dkt. 19-2, at 2; Compl., Dkt. 1-1, ¶ 15). One month later, Mr. Franco contacted Amityville's building inspector, Robert Hayes, to discuss the height of the Property's garage, which Mr. Franco anticipated would be approximately thirty-one feet when completed. SAC, ¶ 20, *Franco I*, Dkt. 29; (2025 Decision, Dkt. 19-2, at 2; Compl., Dkt. 1-1, ¶ 16). This height

[4] Lot coverage is the percentage of the home that is allowed to cover the lot. *Franco I*, 2024 WL 2701646, at *2 n.3.

would have exceeded the thirty-feet maximum height for the "BB" Zoning District, in which the Property is located, and did not conform to the 2021 Plan. SAC, ¶ 20, *Franco I*, Dkt. 29; (2025 Decision, Dkt. 19-2, at 2–3). Hayes told Mr. Franco that the height would be addressed at the final survey, that an exception would be made for the height of the building, and that Mr. Franco should continue constructing the home. SAC, ¶ 20, *Franco I*, Dkt. 29; (Compl., Dkt. 1-1, ¶ 16). Shortly after that conversation, Hayes was terminated as building inspector. (Compl., Dkt. 1-1, ¶ 18.)

In March 2022, Plaintiffs' Property was inspected by Amityville's new building inspector, Gregg Doerner. (*Id.* ¶ 19.) Doerner informed Plaintiffs that the roof of the garage was too high and issued a stop work order. (*Id.* ¶ 20.) At that point, Plaintiffs had spent approximately $100,000 constructing the second floor of the Property and roof over the garage. (*Id.* ¶ 17.) A short time later, Plaintiffs sought a variance for the height of the garage (the "2022 Application"). (*Id.* ¶ 21); *see* 05/26/2022 ZBA Mtg. Notes at ECF[5] 8–9, *Franco I*, Dkt. 32-10 (discussing application for variance made by agent of Mr. and Mrs. Franco).

During the hearing on their variance application, Plaintiffs did not present expert testimony to the ZBA. (Compl., Dkt 1-1, ¶ 22). However, Plaintiffs' agent explained to the ZBA the substance of Mr. Franco's conversation with Hayes. (*Id.* ¶ 23.) Some neighbors testified in support of Plaintiffs' application, explaining that they were concerned about the effect an unfinished home would have on their property values. 05/26/2022 ZBA Mtg. Notes at ECF 8–9, *Franco I*, Dkt. 32-10. Another individual expressed opposition to the application because the ZBA had already given "major variances" to Plaintiffs. *Id.* at ECF 9. "At the conclusion of the public hearing, the [ZBA] summarily denied the Application with no explanation," (the "2022 Denial").

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(Compl., Dkt. 1-1, ¶ 26.) "At no time did the [ZBA] render a formal decision stating the grounds upon which the application was being denied." (*Id.*) Plaintiffs did not seek an Article 78[6] challenge to the ZBA's decision, instead filing the *Franco I* lawsuit in this court in August 2022. (*Id.* ¶ 29; 2025 Decision, Dkt. 19-2, at 3); *see infra* pp. 7–8.

**C. 2024 Variance Application and 2025 Denial**

After the 2022 Denial, Plaintiffs learned that "variances for height are routinely granted in Amityville." (Compl., Dkt. 1-1, ¶ 30.) "In fact, only a year earlier, former Village Mayor Peter T. Imbert received a similar height variance without providing any expert testimony whatsoever[.]" (*Id.*) Accordingly, in late 2024, Plaintiffs filed a second application to the ZBA for a variance (the "2024 Application"). (2025 Decision, Dkt. 19-2, at 1.) Unlike Plaintiffs' 2022 Application, which only sought a variance for the height of the garage, the 2024 Application sought a variance for the height of the garage and residential structure on the Property. (*Id.* at 3.) The height of the residential structure would be approximately thirty-four feet. (*Id.* at 1.)

On February 27, 2025, the ZBA held a public hearing where it discussed Plaintiffs' 2024 Application. (Compl., Dkt. 1-1, ¶ 32.) At the hearing, Plaintiffs presented testimony from a real estate appraiser, who pointed to "at least six other properties over the maximum height in the immediate vicinity of the Franco property all within [the] BB Zoning District." (*Id.* ¶¶ 32–34.) The appraiser acknowledged that the other residential structures within the Zoning District were "estimated to be of a similar height" and that his testimony as to these heights was not precise. (2025 Decision, Dkt. 19-2, at 4.) Plaintiffs also submitted a petition signed by over ninety

[6] Article 78 "allows individuals to challenge state or local administrative determinations because they are 'arbitrary and capricious,' among other grounds." *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 323 n.9 (S.D.N.Y. 2024) (quoting *Ward v. City of Long Beach*, 20 N.Y.3d 1042, 1043 (N.Y. App. Div. 2013)).

community residents supporting their application. (*Id.*) Several neighbors again testified in support of the variance because the Property, in its half-constructed state, was an "eyesore." (*See id.*) Neither Plaintiffs nor Hayes testified during the hearing, but Plaintiffs' counsel explained that the height was increased for aesthetic purposes. (*Id.* at 3–4; *see also* Compl., Dkt. 1-1, ¶ 35.) No testimony was presented about the cost of bringing the Property into compliance with the 2021 Plan. (2025 Decision, Dkt. 19-2, at 4.)

On March 20, 2025, the ZBA denied Plaintiffs' 2024 Application (the "2025 Denial"). (Compl., Dkt. 1-1, ¶¶ 38–40; 2025 Decision, Dkt. 19-2, at 4–6.) The ZBA found the appraiser's testimony unpersuasive because most of it was "based only on estimated and approximate heights of the structures" and "many of the residences" the appraiser identified "were situated outside the BB" Zoning District. (2025 Decision, Dkt. 19-2, at 5.) And although the ZBA was "sympathetic" to the neighbors' concerns about the unfinished property being an eyesore, the ZBA concluded that these concerns did not warrant relief where Plaintiffs could just "lower[] the height of the structures" and comply with the 2021 Plan. (*Id.*) As to the representations by Hayes as to whether Plaintiffs would receive a variance, the ZBA explained that "[t]he [b]uilding [i]nspector is without authority to vary the zoning requirements within the Village," and that there was no testimony from anyone who was present during the conversation between Hayes and Mr. Franco. (*Id.* at 5–6.)

The ZBA outlined the history of Plaintiffs' applications for variances, as well as the 2022 Denial in the 2025 Decision and explained that "[n]o circumstances relating to the as-built construction have changed since the 2022 Application." (*Id.* at 1–3.) The ZBA noted that the variances it had previously granted were already "substantial," and the height variances Plaintiffs now sought would be unacceptable when considered alongside these prior variances. (*Id.* at 4.)

Thus, the construction would "exceed[] the dimensional restrictions established by the Village of Amityville to preserve the character of the community." (*Id.* at 4.) "The benefit sought by [Plaintiffs] would be achieved with less of a degree of nonconformity by constructing the residence and garage pursuant to the [2021 Plan]." (*Id.* at 5.) Given that the 2022 Application and 2024 Application were "substantially the same . . . . [w]ithout any other change in circumstances," the ZBA was "constrained to follow its prior precedent in the 2022 Denial." (*Id.* at 6.)

At the time of the 2025 Decision, construction on the Property remained unfinished. (*See id.* at 3.)

## II. Procedural History

### A. Franco I

On August 9, 2022, after the ZBA denied Plaintiffs' 2022 Application, Mr. Franco filed suit in the Eastern District of New York, (Dkt. 2), alleging that Defendants Dennis M. Sirry (the Mayor of Amityville) and the Village of Amityville's denial of a variance amounted to an unconstitutional taking in violation of the Due Process Clause of the Fourteenth Amendment and constituted a violation of the Equal Protection Clause of the Fourteenth Amendment. Compl. *Franco I*, Dkt. 2. With respect to the latter claim, Mr. Franco alleged that Defendants had selectively enforced the Zoning Code due to their "personal opinion of [Mr. Franco] as a contractor and a Trump supporter," when "[Mr. Franco's] requests for variances were no different than those" granted to several other properties (the "selective enforcement claim"). SAC, ¶ 31, 36–39, *Franco I*, Dkt. 29; Compl., *Franco I*, Dkt. 2. Mrs. Franco was not a party to that lawsuit.

On October 2, 2023, Defendants filed a motion to dismiss, *Franco I*, Dkt. 32, which the Court granted on May 24, 2024, *Franco I*, 2024 WL 2701646. The Court found that Mr. Franco had failed to state a selective enforcement claim because he did not bring it under Section 1983. *Id.* at *5 (explaining that a "plaintiff asserting a cause of action based on the Fourteenth

Amendment's . . . protections must rely on [Section] 1983, which 'provid[es] the basis for securing redress for constitutional violations'" (second alteration in original) (quoting *Deniran v. Museum of Mod. Art*, No. 21-CV-9660 (RA) (SN), 2022 WL 3030508, at *2 (S.D.N.Y. June 17, 2022)). The Court further found that, even if Mr. Franco had properly brought his claims under Section 1983, he had failed to state a selective enforcement claim because he did not allege the existence of similarly situated comparators—that is, properties that were in the same BB Zoning District, had obtained prior variances, and had also received a height variance. *Id.* at *7–8. In addition, the Court found that Mr. Franco failed to allege a due process violation because his alleged "protected property interest in receiving a zoning variance" was rendered non-actionable by the ZBA's discretionary power to grant or deny variances. *Id.* at *6–7. The Court dismissed Mr. Franco's case with prejudice. *Id.* at *9.

**B. Franco II**

On May 28, 2025, after the 2025 Denial, Plaintiffs commenced this instant suit in the Supreme Court of the State of New York, County of Suffolk. (Notice of Removal, Dkt. 1, ¶ 1.) Plaintiffs' Complaint reiterates the procedural history of the ZBA's 2022 Denial and outlines the facts pertinent to the ZBA's 2025 Denial. (Compl., Dkt. 1-1, ¶¶ 11–42.) First, Plaintiffs challenge the ZBA's 2025 Denial under Article 78 because, they allege, the decision ignored expert witness testimony, deviated from prior variances granted, "fail[ed] to set forth a basis as to why Plaintiffs [were] being treated differently than others similarly situated," "erroneously stated the requested relief was substantial when in fact it was not," and refused to acknowledge that Hayes "was responsible for Plaintiffs' continuing construction at substantial expense." (*Id.* ¶ 44.) Second, Plaintiffs charge that Defendants violated the Equal Protection Clause of the Fourteenth Amendment and Article I, Section 11 of the New York Constitution by treating Plaintiffs differently from other residents in Amityville who were granted height variances. (*Id.* ¶¶ 46–55.)

Third, Plaintiffs contend that Defendants violated Section 1983 by selectively enforcing the Zoning Code, denying Plaintiffs due process, and retaliating against them for their public criticisms of Amityville and its leadership. (*Id.* ¶¶ 57–61.)

Defendants timely removed the Complaint and now seek to dismiss Plaintiffs' claims in their entirety. (Dkt. 1; Dkt. 18.) Plaintiffs have cross-moved to amend their Complaint. (Dkt. 21.) These motions were fully briefed on February 6, 2026.

## DISCUSSION

Defendants seek to dismiss the Complaint on the basis that Plaintiffs' claims are barred by *res judicata* (claim preclusion) and fail to state a claim for the reasons stated in *Franco I*. (*See generally* Defs.' Mem. Supp. Mot. Dismiss ("MTD"), Dkt. 20.) For the following reasons, the Court grants the Motion to Dismiss because Plaintiffs' Section 1983 Fourteenth Amendment, and Article I, Section 11 claims[7] are precluded under *res judicata* and, independently, fail to state a claim. The Court also concludes that it lacks jurisdiction to consider Plaintiffs' Article 78 claim. The Court declines to grant Plaintiffs' Cross-Motion for Leave to Amend because Plaintiffs cannot cure these defects in their Complaint.

### I. Materials Considered by the Court

In addition to the materials in the Complaint, in deciding the Motion to Dismiss, the Court considers the documents attached to Defendants' Motion, including the ZBA's 2025 Denial, (Dkt. 19-2), the minutes from the May 26, 2022 meeting where the ZBA denied Plaintiffs' 2022 Application, *Franco I*, Dkt. 32-10, and parts of the Village Code governing the ZBA, (Dkt. 19-3). These documents are integral to the Complaint, as Plaintiffs' suit arises from the ZBA's 2025

[7] Although Plaintiffs treat the Fourteenth Amendment and Article I, Section 11 violations as one equal protection claim, where relevant, the Court bifurcates its analysis of the two.

Denial, its application of provisions of the Village Code, and its reliance on the record of the 2022 Application. *See Rehab. Support Servs., Inc. v. City of Albany, N.Y.*, No. 1:14-CV-0499 (LEK) (RFT), 2015 WL 4067066, at *1 n.2 (N.D.N.Y. July 2, 2015) (considering zoning ordinances for this reason). Alternatively, the Court may take judicial notice of these matters of public record in deciding the Motion. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (explaining that a district court may rely on matters of public record in deciding a motion to dismiss); *see also Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) ("Court[s] may . . . take judicial notice of all documents in the public record, including the decisions of the [zoning board], . . . and the provisions of the Village zoning code[.]"). The Court also takes notice of the filings from *Franco I* as matters of public record. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of public filings in other lawsuits). Neither party disputes the accuracy of any of these documents. (*See generally* MTD, Dkt. 20; Pls.' Mem. Opp'n Mot. Dismiss & Supp. Mot. Amend ("Pls.' Opp'n"), Dkt. 21-2; Pls.' Reply Supp. Mot. Amend ("Pls.' Reply"), Dkt. 24-1; Defs.' Mem. Opp'n Pls.' Proposed Am. Compl. (Defs.' Opp'n), Dkt. 23.) As such, the Court can and does consider the documents attached to Defendants' Motion to Dismiss as well as the filings in *Franco I* in resolving this Motion.

## II. Plaintiffs' Section 1983, Fourteenth Amendment, and Article I, Section 11 Claims

### A. Plaintiffs' Section 1983 and Constitutional Claims Are Barred by *Res Judicata*.

Plaintiffs' Section 1983, Fourteenth Amendment, and Article I, Section 11 claims are barred by *res judicata*. "Under the doctrine of *res judicata*, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Kiryas Joel All. v. Village of Kiryas Joel*, 495 F. App'x 183, 186 (2d Cir. 2012) (summary order) (quoting *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624

(2d Cir. 2007)). The doctrine applies where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

1. *Franco I* Involved an Adjudication on the Merits

The first factor—whether the prior action involved an adjudication on the merits—is clearly met here. The Court granted a motion to dismiss in *Franco I*, and Mr. Franco's claims were dismissed with prejudice. J., *Franco I*, Dkt. 35. It is well-established that granting a motion to dismiss with prejudice is an adjudication on the merits. *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 322 (S.D.N.Y. 2015) (citing *Witchard v. Montefiore Med. Ctr.*, No. 05-CV-5957 (JSR), 2006 WL 2773870, at *6 (S.D.N.Y. Sep. 26, 2006)); *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 415–16 (E.D.N.Y. 2010) (collecting cases), *aff'd*, 438 F. App'x 31 (2d Cir. 2011).

2. Mrs. Franco Is in Privity with Mr. Franco

Although Carolyn Franco was not a party to *Franco I*, the Court finds that she is in privity with Mr. Franco. *Res judicata* "may apply even when the parties to the present action are different from the parties in the preceding action so long as the parties are in privity." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016). While the doctrine of privity has traditionally been applied "only to a narrow class of relationships between defendants" and only where there existed a "successive relationship to the same rights of property," the "modern conception of privity, in the *res judicata* context, applies when a defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (cleaned up) (citations omitted). Privity exists for purposes of *res judicata* "when the interests of a nonparty were adequately represented in the initial action." *Kraus*

*USA, Inc. v. Magarik*, No. 17-CV-6541 (ER), 2019 WL 4744772, at *4 (S.D.N.Y. Sep. 30, 2019) (citing *Waldman v. Village of Kiryas Joel*, 39 F. Supp. 2d 370, 382 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105).

The Court finds that Mrs. Franco's interests were adequately represented by Mr. Franco in *Franco I*. Mrs. Franco resides at the same property as Mr. Franco, was subject to the same zoning restriction challenged in *Franco I*, applied for variances with respect to the Property in 2022 and 2024 alongside her husband, and was allegedly retaliated against by Defendants for her Republican political views. (*See* Compl, Dkt. 1-1, ¶¶ 8, 21); 05/26/2022 ZBA Mtg. Notes at 8–9, *Franco I*, Dkt. 32-10; SAC, ¶¶ 9, 11, 36, *Franco I*, Dkt. 29. The Complaint here does not otherwise suggest that Mrs. Franco holds distinct interests in this litigation from those Mr. Franco represented in *Franco I*. Because Mrs. Franco's interests in this suit are "virtually identical" to her husband's interests in *Franco I*, the Court finds them be in privity. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345–46 (2d Cir. 1995) (explaining that, to determine whether privity exists, courts should determine "whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation"); *accord Winnie v. Durant*, No. 9:20-CV-502, 2021 WL 1999782, at *4 (N.D.N.Y. May 19, 2021).

3. <u>Claims Asserted in This Action Were and Could Have Been Raised in *Franco I*</u>

"Whether a claim that was not raised in the previous action could have been raised [in a subsequent action] 'depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)). To determine whether two actions arise from the same transaction or claim, courts

consider whether the underlying facts of both actions are related in "time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* (quoting *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)).

Plaintiffs' Section 1983, Fourteenth Amendment, and Article I, Section 11 claims in this case could have been raised, or were actually raised, in *Franco I*. To be sure, Plaintiffs now attach different legal theories to some of their factual allegations. For example, Plaintiffs now allege that Defendants denied Plaintiffs due process under Section 1983 rather than under the Fourteenth Amendment directly. *Compare* (Compl., Dkt. 1-1, ¶¶ 57–61), *with* SAC, ¶ 31–34, *Franco I*, Dkt. 29. Plaintiffs also now allege retaliation, rather than simply mentioning that the variance was denied due to their political speech. *Compare* (Compl., Dkt. 1-1, ¶¶ 54, 57, 59), *with* SAC, ¶¶ 1, 9, 16, *Franco I*, Dkt. 29. But "it is the similarity of the factual predicates . . . , not the legal theory upon which the claims are based, that is crucial for purposes of *res judicata*." *Yaba v. Roosevelt*, 961 F. Supp. 611, 622 (S.D.N.Y. 1997) (emphasis added); *see Reeves v. City of Yonkers*, No. 17-CV-5341 (KMK), 2019 WL 2602897, at *5 (S.D.N.Y. June 25, 2019) (finding plaintiffs' claims in the second lawsuit could have been raised in the prior lawsuit because proof of those claims "would depend upon substantially the same facts and evidence" as the prior lawsuit) (citation omitted). Here, the core facts and evidence in this lawsuit and in *Franco I* are the same: Plaintiffs are outsiders in Amityville due to their political opinions or speech; Plaintiffs applied for and received prior variances; Plaintiffs were informed by former Amityville building inspector Hayes that an exception would be made for the non-conformity of Plaintiffs' construction with the 2021 Plan; the new Amityville building inspector Doermer issued a stop work order on the Property in March 2022; Plaintiffs were denied height variances for the Property whereas other properties

were granted height variances; and the ZBA denied Plaintiffs' variance "to punish Plaintiffs for their vocal criticism of the Village and their status as outsiders," (Compl., Dkt. 1-1, ¶¶ 13, 16, 19, 20, 38, 39, 51, 54); *see infra* (discussing these facts as relevant to the merits).

Although Plaintiffs allege facts in their Complaint that post-date the Court's decision in *Franco I*—such as the 2025 Denial—these allegations, alone, cannot rescue their claims from preclusion. "[T]he pleading of subsequent acts will not defeat *res judicata* when these additional facts arise from the same core of operative facts," *Waldman*, 39 F. Supp. 2d at 379, such as where "the overwhelming bulk of the evidence remains the same, and the additional facts pertain to the same pattern and practice of unconstitutional [actions]," *id.* Similarly, subsequent complaints that allege "repetition of the same or similar acts," but merely "resurrect a claim, grounded almost entirely upon [events occurring in prior litigation]," cannot escape *res judicata*. *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 114 (2d Cir. 2000).

*Chestnut Hill NY, Inc. v. City of Kingston, NY*, No. 1:25-CV-0368 (BKS) (DJS), 2026 WL 764641 (N.D.N.Y. Mar. 18, 2026), is instructive. There, the operator of a boarding house for disabled individuals ("Chestnut Hill") sued the City of Kingston for discrimination for imposing certain conditions on a Special Use Permit it had granted. *Id.* at *1–2. This was the third federal action Chestnut Hill had filed against the City of Kingston. *Id.* at *1. In the first action, Chestnut Hill had challenged as discriminatory a determination that "the boarding house was an impermissible non-conforming use." *Id.* at *10. Ultimately, Chestnut Hill was granted "an annually renewable [S]pecial [P]ermit," subject to "a variety of conditions." *Id.* at *2. After the Special Permit was issued, the first action was dismissed by virtue of settlement in 2019. *Id.* at *10. In 2020, 2021, and 2022, Chestnut Hill successfully renewed its Special Use Permit. *Id.* at *2. In 2023, the City denied Chestnut Hill's renewal request, and Chestnut Hill sued for, *inter*

*alia*, discriminatory treatment. *Id*. This second suit was dismissed on the merits through decisions issued in 2024 and 2026. *Id*.[8] In 2026, Chestnut Hill sued the City of Kingston for the third time, alleging disparate treatment "based on disability in connection with the original [S]pecial [P]ermit requirement and conditions." *Id.* at *6. The District Court rejected the argument that "new incidents arising from the application of the Special Permit and its conditions, namely the Planning Board's denials of [the] application to renew the Special Permit" in 2023 salvaged the suit from *res judicata*. *Id.* at *11. The district court held:

> The claim that the City was discriminating against Chestnut Hill on the basis of disability by subjecting Chestnut Hill to the conditions of the Special Permit arises from the "same core operative facts" as *Chestnut Hill I*, namely that the City's application and enforcement of its land use regulations with respect to Chestnut Hill was discriminatory. Chestnut Hill's pleading of subsequent acts through the City's application of the conditions of the Special Permit at each renewal does not defeat *res judicata* because "these additional facts arise from the same core of operative facts."

*Id.* (emphasis added) (citations omitted).

Similar to *Chestnut Hill*, although the ZBA's 2022 and 2025 Denials may be separate *incidents*, they are part of the same *transaction* because they concern the same harm, largely the same evidence, and the same "pattern" of alleged discrimination—the ZBA's selective enforcement of the Zoning Code due to Plaintiffs' status as outsiders—whether because of their political views or public criticism of the Village. *Compare* (Compl., Dkt 1-1, ¶¶ 50, 53, 54, 57–59 (alleging that Defendant's "conduct is in bad faith designed to punish Plaintiffs for their vocal criticism of the Village and their status as outsiders")), *with* SAC ¶ 36, *Franco I*, Dkt. 29 (alleging that Defendants "unilaterally denied plaintiff's variance after it was approved for no rational reason

[8] It does not seem that those decisions addressed *res judicata*. *See Chestnut Hill*, 2026 WL 764641, at *2.

whatsoever except for personal distaste for contractors, republicans, and Trump supporters"); *cf. Yaba*, 961 F. Supp. at 622 (determining that *res judicata* barred additional claims of harassment because "[a]n allegation of hostile work environment harassment, by its nature, includes any claims of an ongoing pattern of conduct[,]" and that "regardless of the number of incidents alleged, or the pleading of the additional incidents in the second complaint, [plaintiff's] claims involve a single transaction—[defendant's] alleged harassment of [plaintiff]"). Although Plaintiffs allege the repetition of the same or similar act, as the ZBA's 2025 Decision makes clear, this repetition exists because Plaintiffs' 2024 Application merely rehashed their 2022 Application. (*See* 2025 Decision, Dkt. 19-2, at 6; Compl., Dkt. 1-1, ¶¶ 39–40 (acknowledging that the ZBA's 2025 Denial "specifically relied upon the 2022 [Denial,] including the record in the 2022 Application")); *see McCrary v. Rich*, No. 21-CV-3684 (KAM) (ARL), 2022 WL 17253479, at *1, *3, *5–7 (E.D.N.Y. Nov. 28, 2022) (determining a plaintiff's new suit was barred by *res judicata* where prior suit alleged that defendant violated his rights by refusing to mail him copies of a traffic ticket, and the only new facts were that plaintiff again requested copies and the defendant again declined), *aff'd*, No. 23-18, 2023 WL 6206176 (2d Cir. Sep. 25, 2023).

Accordingly, Plaintiffs' Section 1983, Fourteenth Amendment, and Article I, Section 11 claims are barred by *res judicata*.

### B. Plaintiffs' Section 1983, Article I, Section 11, and Fourteenth Amendment Claims Fail on the Merits

Even if they were not precluded by *res judicata*, the Court would dismiss Plaintiffs' Section 1983, Fourteenth Amendment, and Article I, Section 11 claims for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

1. <u>Plaintiffs' Fourteenth Amendment Claim</u>

Plaintiffs' Fourteenth Amendment equal protection claim must be dismissed for the same reasons set forth in *Franco I*. As the Court explained in *Franco I*, a "plaintiff asserting a cause of action based on the Fourteenth Amendment's . . . protections must rely on [Section] 1983, which provides the basis for securing redress for constitutional violations." *Franco I*, 2024 WL 2701646, at *5 (cleaned up) (quoting *Deniran*, 2022 WL 3030508, at *2). Here, Plaintiffs' "second cause of action" purports to allege a Fourteenth Amendment equal protection violation, but again fails to invoke Section 1983, and is therefore invalid. (*See* Compl., Dkt. 1-1, ¶¶ 46–55.) Accordingly, the Court dismisses Plaintiffs' Fourteenth Amendment Claim.

2. <u>Plaintiffs' Section 1983 Claim</u>

Plaintiffs' "third cause of action" purports to allege claims pursuant to Section 1983 based on due process and equal protection violations under the Fourteenth Amendment, and retaliation

under the First Amendment. (*Id.* ¶¶ 56–61.) As a threshold matter, Plaintiffs' Section 1983 claim must be brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), because it is brought against the BOT and the ZBA, (*see, e.g.*, Compl., Dkt. 1-1, ¶ 61), which are "local governing bodies" that "may be sued for constitutional deprivations visited pursuant to governmental 'custom'" or policy. *Monell*, 436 U.S. at 690–91. "It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation[.]" *Mastromonaco v. County of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (summary order) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Plaintiffs' Complaint, however, fails to sufficiently allege any underlying due process, equal protection, or retaliation violations.

The Court has already rejected Plaintiffs' due process claim as non-cognizable in *Franco I* because of the discretionary nature of the ZBA's authority with respect to requests for building and zoning variances. As the Court previously noted:

> "The Constitution imposes 'constraints[ ]' . . . on 'governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment.'" *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 427 (E.D.N.Y. 2021) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Those who wish to invoke the Constitution's due process protections, then, must establish that they had a protectable interest in the first place. *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016).
>
> Mr. Franco fails to do so here. Though his complaint is less than clear, Mr. Franco seems to be suggesting that he had a protected property interest in receiving a zoning variance from the ZBA with respect to his oversized roof in May 2022. (*See* SAC, Dkt. 29 ¶ 32.) However, when an individual asserts a protected right in "a building permit or zoning variance, the existence of discretionary action with respect to such applications renders the alleged interest nonprotected." *Sacher v. Village of Old Brookville*, 967 F. Supp. 2d 663, 672 (E.D.N.Y. 2013). So, where a "deciding authority has discretion to grant or deny the relief requested, the individual applying for a permit or variance has no property interest in the issuance of a permit or grant of their application." *Id.* (citation omitted). Zoning boards of appeal, including the Village ZBA, have discretion to grant or deny applications for variances. *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp.

> 2d 357, 369 (S.D.N.Y. 2011) (explaining "[t]he discretion of zoning boards of appeals in granting or denying variance from zoning codes is well-settled" and collecting cases). Thus, because the ZBA performs a discretionary function when deciding whether to grant zoning variances, Mr. Franco did not have a constitutionally protectable property interest in the variance that was denied in May 2022, and his due process claim—whether substantive or procedural—fails.

*Franco I*, 2024 WL 2701646, at *7 (citation modified). Here, too, Plaintiffs have not articulated what they possess a protectable property interest in.[9] Though, construed liberally, their Complaint suggests a protectable interest in obtaining a variance, as noted in *Franco I* and Amityville's Code, the granting of a variance is an inherently discretionary function. (*See* Village of Amityville, N.Y., CODE § 4-2(A)(1) (2023), Dkt. 19-3 ("The [ZBA] shall have the . . . power[] [t]o authorize a modification of the frontage, front yard, side yard, rear yard, depth and lot area requirements in the . . . BB Residence [District.]"). Plaintiffs have no protectable interest in a variance. *See also Lamar Advert. of Penn, LLC v. Pitman*, 573 F. Supp. 2d 700, 707 (N.D.N.Y. 2008) (collecting cases finding no property interest in a variance due to its discretionary nature); *Gregory v. Inc. Village of Center Island*, No. 14-CV-2889 (JFB) (AKT), 2015 WL 5093623, at *9 (E.D.N.Y. Aug. 28, 2015) (same). Plaintiffs therefore have not alleged a due process violation.[10]

Plaintiffs' allegation that Defendants denied them equal protection vis-a-vis selective enforcement, (Pls.' Opp'n, Dkt. 21-2, at 12–13), must be dismissed because Plaintiffs <u>still</u> fail to

---

[9] In fact, Plaintiffs do not clarify *what* due process interest they are asserting. In their Complaint, they state that they are bringing a substantive due process claim. (Compl., Dkt. 1-1, ¶ 57.) But in briefing, they seem to change course and assert a *procedural* due process claim. (Pls.' Opp'n, Dkt. 21-2, at 15 ("Plaintiffs were entitled to a full and fair hearing to have the 2024 Application decided upon its own merit.").)

[10] Tellingly, Plaintiffs present no argument in response to Defendants' argument that they lack a protectable interest. (*Compare* MTD, Dkt. 20, at 15–17, *with* Pls.' Opp'n, Dkt. 21-2.) Thus, the Court also finds that Plaintiffs have abandoned this claim. *See Johnson v. AFNI, Inc.*, No. 22-CV-2930 (JGK), 2023 WL 2970919, at *1 (S.D.N.Y. Apr. 15, 2023) (collecting cases finding failure to oppose an argument in a motion to dismiss abandons the claim).

allege the existence of similarly situated comparators. *See Franco I*, 2024 WL 2701646, at *7–8 (finding that Mr. Franco did not allege the existence of similarly situated comparators). To state a selective enforcement claim, a plaintiff must allege, *inter alia*, that similarly situated comparators were treated more favorably than he was. *Id.* at *8. These comparators need not be identical but must be similar "in all material respects." *Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684, 686 (2d Cir. 2009) (summary order) (citing *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53–54 (2d Cir. 2001)). "[T]he test is whether a prudent person would think them roughly equivalent." *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 355 (S.D.N.Y. 2004) (quoting *DePace v. Flaherty*, 183 F. Supp. 2d 633, 640 (S.D.N.Y. 2002)). As the Court noted in *Franco I*:

> "Generally, whether two comparators 'are similarly situated is a factual issue that should be submitted to the jury.'" *LTTR Home Care, LLC, v. City of Mt. Vernon Indus. Dev.*, No. 17-CV-9885 (KMK), 2019 WL 4274375, at *12 (S.D.N.Y. Sept. 10, 2019) (quoting *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). At this stage, "a court must determine whether, based on a plaintiff's allegations . . . , a jury could ultimately determine that the comparators are similarly situated." *Id.* Consequently, "[w]ell-pled facts showing 'that the plaintiff has been treated differently from others similarly situated, remain[ ] an essential component of such a claim.'" *Bishop v. Best Buy, Co. Inc.*, No. 08-CV-8427 (LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (quoting *Sweeney v. City of N.Y.*, No. 03-CV-4410, 2004 WL 744198, at *5 (S.D.N.Y. Apr. 2, 2004)), *aff'd sub nom. Bishop v. City of N.Y.*, 518 F. App'x 55 (2d Cir. 2013).

*Franco I*, 2024 WL 2701646, at *8.

Where, as here, a plaintiff challenges a zoning board decision, the plaintiff must identify "comparators who are similarly situated to her with regard to the zoning board's 'principal reasons' for denying the application." *See Dean*, 527 F. Supp. 3d at 432 (E.D.N.Y. 2021) (quoting *Pappas v. Town of Enfield*, 602 F. App'x 35, 36 (2d Cir. 2015) (summary order)); *Amid v. Village of Old Brookville*, No. 11-CV-3800, 2013 WL 527772, at *6–7 (E.D.N.Y. Feb. 7, 2013) ("[W]here a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific

examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged."); *Sagaponack Realty LLC v. Village of Sagaponack*, No. 2:17-CV-5277 (DRH) (SIL), 2018 WL 4259988, at *6 (E.D.N.Y. Sep. 6, 2018) (similar), *aff'd*, 778 F. App'x 63 (2d Cir. 2019).

Here, the Complaint conclusorily alleges that Plaintiffs have "been treated differently than other residents of the Village who are similarly situated and have been granted height variances." (Compl., Dkt. 1-1, ¶ 50.) "Examples of this disparate treatment include[:] (1) 44 Lebrun Avenue; (2) 100 Braham Avenue; and (3) . . . 64 Griffing Avenue." (*Id.* ¶ 51.) As in *Franco I*, Plaintiffs have not "pleaded whether the other properties sit in the same zoning district and are therefore subject to the same zoning restrictions," nor "provided information on when the other variances were applied for or granted." 2024 WL 2701646 at *8; *see also Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 603–604 (S.D.N.Y. 2010) (determining plaintiffs, although alleging the existence of other units that were approved for development, failed to allege that "the other developments were similar in size or scope to the proposed development, or that they were approved during the same time frame"). Plaintiffs also fail to explain how these comparators are similarly situated with respect to the reasons for the ZBA's 2025 Denial—namely, that Plaintiffs' proposed height variance, when combined with the *existing* variances the ZBA had granted, would "exceed[] the dimensional restrictions established by the Village of Amityville to preserve the character of the community." (2025 Decision, Dkt. 19-2, at 4); *see Franco I*, 2024 WL 2701646, at *8 (dismissing selective enforcement claim for failure to specify that comparator properties "had also received prior variances, and/or been subject to stop work orders"); *104 S. Div. St. LLC v. City of Peekskill*, No. 22-CV-9009 (NSR), 2025 WL 283295, at *1, *4 (S.D.N.Y. Jan. 23, 2025) (dismissing selective enforcement claim that alleged that plaintiffs were wrongly

subjected to delays in construction because the complaint did not specify if comparator properties required similar "permits, variances, and approvals").[11] In other words, Plaintiffs have not alleged that these properties were similarly situated in *material* ways. Accordingly, Plaintiffs have failed to state a traditional selective enforcement claim. *McCartney v. City of New York*, No. 23-CV-8232 (NRM) (JAM), 2025 WL 2711429, at *4–5 (E.D.N.Y. Sep. 23, 2025) (dismissing complaint for failure to plead the existence of valid comparators).

Finally, Plaintiffs have failed to allege First Amendment retaliation. To properly plead a claim for First Amendment retaliation under Section 1983, Plaintiffs must adequately allege: (1) they have a right protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by their exercise of that right; and (3) Defendants' actions "effectively chilled the exercise of their First Amendment right[s]." *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *accord Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). Plaintiffs' claim falters at the third element, because they do not plead that their speech was chilled. To the contrary, Plaintiffs allege that *since* they moved to the Village, they have been "outspoken critics of the Village" and that they "often use social media" to criticize the Village. (Compl., Dkt. 1-1, ¶ 13.) "Where a party can show no change in [their] behavior, [they] ha[ve] quite plainly shown no chilling of [their] First Amendment right to free speech." *See Curley*, 268 F.3d at 73; *accord*

[11] In their Complaint, Plaintiffs allege that the 2025 Decision was a "six-page decision which[] . . . fails to articulate the grounds that the [ZBA] was relying upon or any analysis whatsoever[.]" (Compl., Dkt. 1-1, ¶ 39.) Contrary to this allegation, the 2025 Decision, which is integral to the Complaint, *see supra* pp. 9–10, offers both the grounds for the ZBA's denial and its analysis. (*See* 2025 Decision, Dkt. 19-2.) "If a document integral to the complaint contradicts that complaint, the document controls, and the court need not accept the complaint's allegations as true." *Trustpilot Damages LLC v. Trustpilot, Inc.*, No. 21-CV-432 (JSR), 2021 WL 2667029, at *3 (S.D.N.Y. June 29, 2021), *aff'd*, No. 21-2837-CV, 2022 WL 2124865 (2d Cir. June 13, 2022).

*MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (collecting cases).[12]

3. Article I, Section 11 of the New York Constitution

The Court must also dismiss Plaintiffs' Article I, Section 11 claim for the reasons it dismissed Plaintiffs' selective enforcement claim. "The equal protection guarantees under the New York Constitution [under Article I, Section 11] are coextensive with those under the U.S. Constitution." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, NY*, 945 F.3d 83, 110 n.211 (2d Cir. 2019) (citing *People v. Kern*, 75 N.Y.2d 638, 649 (1990)); *303 W. 42nd St. Corp. v. Klein*, 46 N.Y.2d 686, 693 (1979) (stating that, in the context of selective enforcement, the "underlying right asserted . . . is to equal protection of the laws as guaranteed by the [Fourteenth] Amendment and the New York State Constitution"). As with selective enforcement claims asserted under Section 1983, to assert a selective enforcement claim under Article I, Section 11, a plaintiff must allege the existence of similarly situated comparators—that is, properties that a prudent person would find to be "roughly equivalent.'" *Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 631 (2004). Because Plaintiffs have failed to allege the existence of such comparators under Section 1983, the Court must dismiss Plaintiffs' Article I, Section 11 claim for the same reason. *See Fishman v. County of Nassau*, No. 10-CV-3231 (DRH) (AKT), 2011 WL 3919713, at *10 (E.D.N.Y. Sep. 7, 2011) (dismissing Article I, Section 11 claim for this reason); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 754–55 (2d Cir. 2003) (affirming district court decision holding the same).

---

[12] The Complaint also fails to allege any facts from which to infer that the ZBA's actions were "motivated or substantially caused" by Plaintiffs' exercise of their free speech rights. *Curley*, 268 F.3d at 73. Plaintiffs' unsupported, conclusory statements to the contrary are insufficient. (*See*, *e.g.*, Compl., Dkt. 1-1, ¶ 4 (alleging, upon information and belief, that the ZBA's conduct was "designed to punish Plaintiffs for their vocal criticism").)

## III. The Court Does Not Have Jurisdiction Over the Article 78 Claim

The Court dismisses Plaintiffs' Article 78 claim for lack of jurisdiction. Proceedings under Article 78 can only be heard in the New York State Supreme Court. *See* N.Y. C.P.L.R. 7804(b) ("A proceeding under this article shall be brought in the supreme court in the county specified in subdivision (b) of [N.Y. C.P.L.R. 506] except as that subdivision otherwise provides."). The Court therefore joins other district courts in New York in declining to impinge upon that exclusive jurisdiction and therefore dismisses Plaintiffs' Article 78 claim. *See Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (determining Article 78 claim should be dismissed because "New York State has not empowered the federal courts to consider such claims" (citing *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003)); *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, No. 10-CV-8002 (RPP), 2011 WL 3427138, at *15 (S.D.N.Y. Aug. 5, 2011) (similar), *aff'd*, 678 F.3d 184 (2d Cir. 2012).[13]

## IV. Leave to Amend Denied

Plaintiffs seek leave to amend their Complaint and attach a proposed Amended Complaint. (Decl. Linda S. Agnew, Dkt. 21-1, at ECF 1.) That Amended Complaint adds factual allegations concerning Plaintiffs' criticism of Defendants "on social media and elsewhere" after 2022, (Proposed Am. Compl., Dkt. 21-1, at ECF 25–26), and attaches nearly 100 pages of social media posts by Mrs. Franco to that effect, (*see* Proposed Am. Compl. Ex. A, Dkts. 21-3, 21-4). Plaintiffs add that 195 S. Ketcham Avenue, 74 Hamilton Street, and 123A S. Ketcham Avenue, which are

---

[13] The Court acknowledges that some courts in this district have exercised jurisdiction over Article 78 claims. *See Garofalo v. City of New York*, No. 1:22-CV-7620 (NRM) (VMS), 2023 WL 3792514, at *3–6 (E.D.N.Y. June 2, 2023) (exercising supplemental jurisdiction over Article 78 claim, but noting that other courts have declined to find jurisdiction). Even if the Court had supplemental jurisdiction over this claim, it would decline to exercise it, due to Plaintiffs' failure to allege federal claims.

properties within the BB Zoning District, received height variances. (Proposed Am. Compl., Dkt. 21-1, at ECF 30–32.) Plaintiffs also allege that 44 Lebrun Avenue, 51 Shore Road, 100 Braham Avenue, and 64 Griffing Avenue were granted height variances; although these properties are not in the BB Zoning District, Plaintiffs contend that "[u]pon information and belief, effectively the same considerations are required to approve variances" in those districts. (*Id.* at ECF 9, 29–30.) Finally, Plaintiffs allege additional incidents of purported retaliation against them.[14]

The Court denies Plaintiffs leave to amend, because the proposed Amended Complaint fails to cure the aforementioned deficiencies. First, Plaintiffs' new allegations outlining alleged comparator properties do not resolve the fact that this selective enforcement claim is barred by *res judicata*. Moreover, these allegations still fail to allege *material* similarity, namely that these properties were granted height variances *in addition* to other dimensional variances. (*Compare* Proposed Am. Compl., Dkt. 21-1, at ECF 29–32, *with* 2025 Decision, Dkt. 19-2, at 4 (explaining that the height variance was denied in part because the Property had been granted prior variances and that expansions, considered together, would "greatly exceed[] the dimensional restrictions established by the Village of Amityville to preserve the character of the community").)[15] Second,

[14] Specifically, Plaintiffs allege that they applied for a permit to build a swimming pool on the Property in 2025, but that the Amityville denied the application because, *inter alia*, Village policy prevents "permits [to] be issued for any premises having open violations or stop work orders 'unless and until the matters causing such violations or stop work orders are resolved to the satisfaction of the building department.'" (Proposed Am. Compl., Dkt. 21-1, at ECF 33 (citation omitted).) Additionally, on August 25, 2025, Mr. Franco was arrested and charged under N.Y. Penal Law § 490.20(1) for stating, in a moment of frustration, that he would "blow up" the Village's Building Department. (*Id.* at ECF 36–37.) Plaintiffs allege that the "denial of Plaintiffs' swimming pool application and [Mr. Franco's] arrest on 'terrorism charges' came at the behest of the Village in retaliation for Plaintiffs' exercise of their First Amendment rights." (*Id.* at ECF 35.)

[15] Plaintiffs claim that they have omitted this information because "Defendants have failed to provide Plaintiffs with complete property details and variance histories, despite multiple requests" for that information. (Pls.' Reply, Dkt. 24-1, at 3; Proposed Am. Compl., Dkt. 21-1, at ECF 29.) This is incorrect, as Defendants, in their opposition to Plaintiffs' Cross-Motion to Amend the Complaint, provided details about each of the properties Plaintiffs cite as comparators,

Plaintiffs' additional descriptions of retaliation still do not allege that their speech was chilled, and their additional allegations again establish that Plaintiffs "*continued to criticize* the Village" since the 2022 and 2025 Denials. (Proposed Am. Compl., Dkt. 21-1, at ECF 25–26); *see supra* n.14(outlining Mr. Franco's vocal outburst in August 2025). Because these pleadings "will not cure" the defects in Plaintiffs' Complaint, the Court denies leaves to amend. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Leave to amend is also inappropriate here because Plaintiffs are counseled, had notice of the defects in some of their claims as set forth in *Franco I*, and *still* failed to cure those identified deficiencies in their current Complaint and proposed Amended Complaint. *See supra* pp. 16–23 (dismissing Plaintiffs' Fourteenth Amendment, due process, and selective enforcement claims for the same reasons articulated in *Franco I*); *cf. Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (denying leave to replead where "the plaintiff has repeatedly failed to cure the deficiencies in his complaint"); *zuMedia Inc. v. IMDb.com, Inc.*, No. 23-CV-8472

---

including material details distinguishing those properties from Plaintiffs' Property. (Defs.' Opp'n, Dkt. 23, at 2–4; Aff. Supp. Defs.' Opp'n, Dkt. 22.) Yet, in their reply, Plaintiffs failed to discuss that information or explain how it might undermine or otherwise affect Plaintiffs' motion to amend and the potential futility of that effort. (*See* Pls.' Reply, Dkt. 24-1, at 2–3 ("Defendants have failed to provide Plaintiffs with complete property details and variance histories[.]").) Furthermore, as a general matter, comparator information that is exclusively within the defendants' possession may be alleged "upon information and belief." *Cf. Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *Lopez v. Advantage Plumbing & Mech. Corp*, No. 15-CV-4507 (AJN), 2016 WL 1268274, at *3 (S.D.N.Y. Mar. 31, 2016). *But see Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, No. 20-CV-8180 (CM), 2022 WL 4109723, at *9 (S.D.N.Y. Sep. 8, 2022) ("[M]atters of public record are not to be alleged on information and belief." (citing *Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010)). Plaintiffs appear to be aware of this approach, as they rely on "information and belief" to allege the dates that variances were granted on the alleged comparator properties. (Proposed Am. Compl., Dkt. 24-1, at ECF 29–32.) But Plaintiffs still fail to provide any allegations—even upon information and belief—addressing how these properties are similarly situated *with regard to the reasons outlined in the 2025 Denial*.

(VSB), 2024 WL 4566551, at *4 (S.D.N.Y. Oct. 24, 2024) (collecting cases reaching the same outcome).

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss and denies Plaintiffs' Cross-Motion to Amend the Complaint. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2026
Brooklyn, New York